UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
MANNY PASTREICH, AS TRUSTEE, AND THE
TRUSTEES OF THE BUILDING SERVICE 32BJ HEALTH
FUND, BUILDING SERVICE 32BJ LEGAL SERVICES
FUND, AND BUILDING SERVICE 32BJ THOMAS
SHORTMAN TRAINING, SCHOLARSHIP AND SAFETY
FUND,

Civil Action
No. 25-cv-8675

                         Plaintiffs,         **COMPLAINT**

-v-

BRAVO! BUILDING SERVICES, INC.,
BRAVO! FACILITY SERVICES INC.,
INNOVATIVE FACILITY SERVICES, LLC,
KELLERMEYER BERGENSONS SERVICES, LLC,

                         Defendants.
------------------------------------------------------------------------X

Manny Pastreich, as Trustee, and the Trustees of the Building Service 32BJ Health Fund, Building Service 32BJ Legal Services Fund, and Building Service 32BJ Thomas Shortman Training, Scholarship and Safety Fund (collectively the "Funds"), as and for their Complaint against Bravo! Building Services, Inc., Bravo! Facility Services Inc., Innovative Facility Services LLC ("Innovative", and Kellermeyer Bergensons Services, LLC ("KBS") (collectively "Defendants"), respectfully allege as follows:

## NATURE OF ACTION

1. This is a civil action brought pursuant to Sections 502(a)(3) and 515 of the Employee Retirement Income Security Act, as amended (29 U.S.C. §§1132(a)(3), 1145) (hereinafter referred to as "ERISA") and Section 301 of the Labor-Management Relations Act of 1947 (29 U.S.C. §185) (hereinafter referred to as the "Taft-Hartley Act"), by the Trustees of employee health, legal, and training funds for contractual and equitable relief under ERISA to secure performance by an employer of specific and contractual obligations. This

Complaint alleges that by failing to comply with a payroll compliance audit (the "Audit"), namely by providing the documents demanded by the Funds through their designated representatives, Defendant violated the terms of its collective bargaining agreements, the Funds' respective Trust Agreements, the rules and regulations of the Funds, and ERISA. This Complaint seeks immediate production of the audit documents, and upon completion of the audit, a Judgment for the associated audit findings principal and interest, plus liquidated damages, audit fees, attorney's fees and costs of suit.

## JURISDICTION

2. Jurisdiction of this Court is invoked under the following statutes:

   (a) Section 502(e)(1) and (f) of ERISA (29 U.S.C. §1132(e)(1) and (f);
   (b) Section 301 of the Taft-Hartley Act (29 U.S.C. §185);
   (c) 28 U.S.C. §1331 (federal question); and
   (d) 28 U.S.C. §1337 (civil actions arising under an Act of Congress regulating commerce.

## VENUE

3. Venue properly lies in this district under Section 502(e)(2) of ERISA (29 U.S.C. §1132(e)(2). Service of process may be made on Defendants in any other district in which they may be found, pursuant to Section 502(e)(2) of ERISA (29 U.S.C. §1132(e)(2)).

## PARTIES

4. The Funds are jointly-administered, multi-employer, labor-management trust funds established and maintained pursuant to various collective bargaining agreements in accordance with Section 302(c)(5) of the Taft-Hartley Act (29 U.S.C. §186(c)(5)). The Funds are employee benefit plans within the meaning of Sections 3(2), 3(3) and 502(d)(1) of ERISA (29 U.S.C. §1002(2), (3), and 1132(d)(1)), and multi-employer plans within the meaning of Sections 3(37) and 515 of ERISA (29 U.S.C. §1002(37) and 1145). The

Trustees are authorized to maintain suit under Section 502(d)(1) of ERISA (29 U.S.C. §1132(d)(1)). The purpose of the Funds is *inter alia* to receive contributions from employers who are parties to collective bargaining agreements with Service Employees International Union, Local 32BJ (the "Union"), to invest and maintain those moneys, and to distribute health insurance, legal and training benefits to those employees eligible to receive them. The Funds maintain their offices and are administered at 25 West 18th St., New York, New York 10011, in the City, County and State of New York.

5. The Union is a labor organization within the meaning of Section 301 of the Taft-Hartley Act (29 U.S.C. §185) which represents employees in an industry effecting commerce as defined in Section 501 of the Taft-Hartley Act (29 U.S.C. §143) and Section 3(4) of ERISA (29 U.S.C. 1002(4)). The Union maintains its offices at 25 West 18th St., New York, New York 10011, in the City, County, and State of New York.

6. Upon information and belief, Bravo! Building Services, Inc. is a New Jersey for profit corporation having a principal place of business at 1140 Route 22 East, Suite 202, Bridgewater, New Jersey 08807, and doing business as an employer within the meaning of Sections 3(5) and 515 of ERISA (29 U.S.C. §§1002(5) and 1145), and was and is an employer in an industry affecting commerce within the meaning of Section 301 of the Taft-Hartley Act (29 U.S.C. §185).

7. Upon information and belief, Bravo! Facility Services Inc. is a Virginia for profit corporation having a principal place of business at 1140 Route 22 East, Suite 202, Bridgewater, New Jersey 08807, and doing business as an employer within the meaning of Sections 3(5) and 515 of ERISA (29 U.S.C. §§1002(5) and 1145), and was and is an

employer in an industry affecting commerce within the meaning of Sections 301 of the Taft-Hartley Act (29 U.S.C. §185).

8. Upon information and belief, Innovative Facility Services LLC is a New Jersey for profit corporation having a principal place of business at 1140 Route 22 East, Suite 202, Bridgewater, New Jersey 08807, and doing business as an employer within the meaning of Sections 3(5) and 515 of ERISA (29 U.S.C. §§1002(5) and 1145), and was and is an employer in an industry affecting commerce within the meaning of Section 301 of the Taft-Hartley Act (29 U.S.C. §185).

9. Upon information and belief, Kellermeyer Bergensons Services, LLC, is a Delaware for profit corporation having a principal place of business at 3605 Ocean Branch Blvd., Suite 200, Oceanside, CA 92056, and doing business as an employer within the meaning of Sections 3(5) and 515 of ERISA (29 U.S.C. §§1002(5) and 1145), and was and is an employer in an industry affecting comm

10. Upon information and belief, Innovative and KBS are affiliates of one another. Innovative, on its website, states that "[Innovative] is the union affiliate of KBS, the largest privately held facility services provider in North America."

11. Upon information and belief, Bravo! Facility Services Inc. and Bravo! Building Services, Inc. are joint employers, or alter egos, operating at all relevant times under the name "Bravo! Group Services", with the same management, principal place of business, ownership, employees and customers.

12. Upon information and belief, on or about October 2021, Defendant KBS acquired Defendants Bravo! Building Services Inc., Bravo! Facility Services, Inc.

13. Upon information and belief, at the time of the acquisition Defendant KBS' Chief Executive Officer stated that:

> BRAVO! is a recognized industry leader and we are excited to welcome their talented team to KBS. BRAVO! has built trusted relationships with global clients across its business and industrials end-markets. I see this partnership as truly synergistic. BRAVO! enhances our service capabilities in regulated industries and KBS brings the scale to best position them to serve their customers need across North America.

14. Upon information and belief, at the time of the acquisition, Defendants Bravo! Building Services Inc. and Bravo! Facility Services Inc.'s founder and Chief Executive Officer, indicated that:

> We are excited to join forces with KBS, a company that shares our deep commitment to quality and service, and provides professional growth opportunities for our employees. BRAVO! customers will benefit from enhanced resources, cutting edge innovation, and a broader service portfolio.

**FACTS**

15. Defendants, under the names Bravo! Facility Services Inc. and Bravo! Building Services, Inc. and through December 31, 2024, were parties to a series of Agreements with the Union. As part of said Agreements, at all times relevant Defendants were required to make contributions to the respective Funds on behalf of all eligible employees.

16. As part of the Agreements, Defendants agreed to adhere to the Funds' respective Trust Agreements, and the Funds' rules and regulations:

> By agreeing to make the required payments to the Funds, the Employer hereby adopts and shall be bound by the Agreement and Declaration of Trust, as it may be amended and the rules and regulations adopted or hereafter adopted by the Trustees of each Fund in connection with the provision and amendment of benefits and the collection of contributions. The Trustees of the Funds shall make such amendments to the Trust Agreements, and shall adopt such regulations as may be required to conform to applicable law.

17. On a going forward basis, contributing employers, including Defendants, made and/or make contributions to the Funds based on employer self-reporting in the Funds' Employer Self-Service System ("ESS"). Based on this self-reporting by Defendants, the Funds provide health insurance, legal and training benefits, and Defendants pay the associated contributions on behalf of all employees that Defendants assert are performing covered work.

18. Said ESS accounts were maintained under the names of Bravo! Building Services, Inc. and Bravo! Facility Services Inc.

19. Since contributions are owed to the Funds, pursuant to the Agreements, on behalf of all eligible employees, and not merely those reported by Defendants as covered, the Funds periodically audit all contributing employers. The purpose of these audits is to (1) ensure that all reported employees were accurately reported, and (2) to verify that no unreported employees were eligible for benefit coverage and, therefore, should have had contributions made on their behalf.

20. Defendants are obligated, pursuant to the Funds' Trust Agreements and rules and regulations, to fully comply with these audits. To wit, the Funds' Trust Agreements each contain the following:

> Section 6. <u>Furnishing Requested Information</u>. The Trustees may call upon the Employers and/or the Union to furnish to the Trustees such information and reports as they may require in the performance of their duties under this Trust Agreement and the Employers and/or Union shall furnish the same when so requested. The Trustees or their representatives, duly authorized in writing, shall have the right to audit, examine and make copies of all or any part of the books and records, cash books, ledgers, contracts, tax returns or reports, or any other book or record which the Trustees deem necessary or desirable in connection with the proper administration of the Trust Fund. In any case that arbitration or legal action becomes necessary to enforce an Employer's obligation to submit

to an audit or otherwise provide reports or requested information, the Trustees shall also be entitled to recover any and all expenses of that enforcement action, including, but not limited to, audit fees, counsel fees, arbitration costs and fees, and court expenses.

21. The Funds' rules and regulations confirm that Defendant must fully cooperate with Fund's payroll audits:

> IV. Compliance Audit Program
>    ….
>
> B. Employer's duty to cooperate with auditor. Employers are required, pursuant to the Trust Agreements and their collective bargaining agreements, to cooperate with the Funds' auditor by promptly providing all records that are requested to permit the auditors to make a determination regarding the accuracy, completeness, and timeliness of the employer's reports and remittances to the Funds

22. The Funds contract with the accounting firm of Schultheis & Panettieri, LLP (the "Accounting Firm"), to perform payroll compliance audits of covered employers.

23. The Accounting Firm consistently requires the production of the following documents by employers for payroll compliance audits on behalf of the Funds: for the audit time period, complete (1) individual earnings records (payroll history journals), (2) weekly payroll journals, (3) timesheets, (4) quarterly state and federal payroll taxes, (5) W-2s, (6) employee roster (identifying all employees, work locations, job titles, hire/term dates), (7) general ledger/cash disbursements journal, and (8) 401(k) enrollment forms (collectively the "Audit Documents").

24. The Funds and Accounting Firm have determined that the complete Audit Documents are necessary to perform a payroll compliance audit of Defendants, and the other contributing employers.

25. The Funds commenced an Audit of Defendants for the time period January 1, 2019, through December 31, 2024.

26. The Funds commenced said audit by correspondence dated August 1, 2022.

27. The communications between Defendants and the Accounting Firm have, from employers' side, each been from individuals with contact information for Innovative and/or KBS.

28. In communications with the Accounting Firm, Defendants represented that "Bravo was integrated into Innovative Facility Services".

29. Defendants refuse to cooperate with the Audit and have refused or otherwise failed to provide the complete Audit Documents to the Funds or Accounting Firm.

30. In so refusing, in January 2025, KBS' Senior Manager for Labor Relations explicitly indicated that Defendants would not comply with the Bravo! audit, as Defendants would not provide the Audit Documents due to their own subjective belief that the records were not required.

## AS AND FOR A FIRST CLAIM FOR RELIEF
### (FUNDS' CLAIM FOR BREACH OF CONTRACT UNDER SECTION 301)

31. The Funds repeat and reallege each allegation set forth in paragraphs 1 through 30 as if fully set forth herein.

32. Defendants are obligated, pursuant to the terms of the Agreement and ERISA, to permit and cooperate in the conducting of audits of the books and records of Defendants by the Funds.

33. At all times material herein, Defendants have failed and refused to fully cooperate with the audit of their books and records for the time period January 1, 2019, through December 31, 2024.

34. Absent an injunction from this Court, the Funds have no way of knowing if Defendants are in compliance with the Agreements and ERISA.

35. The Funds will be irreparably harmed without an injunction. Plaintiffs will lose Defendants' contributions, while at the same time potentially having to pay out benefits to Defendants' employees. Additionally, covered employees not reported by Defendants will continue not receiving benefits at all.

36. Accordingly, pursuant to the terms and conditions of the Agreements and ERISA, the Funds demand an Order directing Defendants to permit and cooperate with the Funds and/or their designated representatives in the conduct of the aforesaid Audit of Defendants' book and records, and for the audit costs already incurred, the audit costs that will be incurred, attorney's fees and other damages called for by the Agreements and ERISA. Further, upon production and delivery of the Audit Documents, the Funds demand a Judgment against Defendants, jointly and severally, for the Audit findings principal, interest and liquidated damages.

## AS AND FOR A SECOND CAUSE OF ACTION
### (FUNDS' ERISA CLAIM FOR EMPLOYER FAILURE TO COMPLY WITH AUDIT)

37. The Funds repeat and reallege each allegation set forth in paragraphs 1 through 36 as if fully set forth herein.

38. Defendants are obligated, pursuant to the terms of the Agreement and ERISA, to permit and cooperate in the conducting of audits of the books and records of Defendants by the Funds.

39. At all times material herein, Defendants have failed and refused to fully cooperate with the audit of their books and records for the time period January 1, 2019, through December 31, 2024.

40. Absent an injunction from this Court, the Funds have no way of knowing if Defendants are in compliance with the Agreements and ERISA.

41. The Funds will be irreparably harmed without an injunction. Plaintiffs will lose Defendants' contributions, while at the same time potentially having to pay out benefits to Defendants' employees. Additionally, covered employees not reported by Defendants will continue not receiving benefits at all.

42. Accordingly, pursuant to the terms and conditions of the Agreements and ERISA, the Funds demand an Order directing Defendants to permit and cooperate with the Funds and/or their designated representatives in the conduct of the aforesaid Audit of Defendants' book and records, and for the audit costs already incurred, the audit costs that will be incurred, attorney's fees and other damages called for by the Agreements and ERISA. Further, upon production and delivery of the Audit Documents, the Funds demand a Judgment against Defendants, jointly and severally, for the Audit findings principal, interest and liquidated damages.

   WHEREFORE, plaintiffs Funds demand Judgment:
   a. Against Defendants, jointly and severally, mandating immediate production of the complete Audit Documents to the Funds or Accounting Firm;
   b. Against Defendants, jointly and severally, for the audit fees already incurred, and the audit fees to be incurred by the Funds in performing the Audit;
   c. Against Defendants, jointly and severally, upon completion of the Audit, prompt payment of the Audit findings principal, interest, and liquidated damages;
   d. Against Defendants, jointly and severally, for reasonable attorney's fees incurred as part of this litigation.
   e. Against Defendants, jointly and severally, for costs incurred in litigating this action.
   f. For such other and further relief as the Court deems just and proper.

Dated: Fort Lee, New Jersey
      October 20, 2025

RAAB, STURM & GANCHROW, LLP

By: _____
Samuel R. Bloom (SB1988)
*Attorneys for Plaintiffs*
2125 Center Ave., Suite 100
Fort Lee, New Jersey 07024
T: (201) 292-0150
F: (201) 292-0152
sbloom@rsgllp.com